# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

**KATHY A. CALDERONE,**

      **Plaintiff,**

**v.**                                      **Case No. 8:06-CV-916-T-EAJ**

**MICHAEL J. ASTRUE,**[1]
**Commissioner of Social Security,**

      **Defendant.**

_____ /

## FINAL ORDER

Plaintiff brings this action pursuant to the Social Security Act ("the Act"), as amended, Title 42, United Sates Code, Sections 405(g) and 1383(c)(3), to obtain judicial review of a final decision of the Commissioner of Social Security (the "Commissioner") denying her claims for disability insurance benefits ("DIB") and Supplemental Security Income payments ("SSI") under the Act.[2]

The undersigned has reviewed the record, including a transcript of the proceedings before the Administrative Law Judge ("ALJ"), the exhibits filed, the administrative record, and the pleadings and memoranda submitted by the parties in this case.

In an action for judicial review, the reviewing court must affirm the decision of the Commissioner if it is supported by substantial evidence in the record as a whole and comports with applicable legal standards.  See 42 U.S.C. § 405(g) (2003).  Substantial evidence is "such relevant

---

[1] On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security. Therefore, pursuant to Rule 25(d)(1), Federal Rules of Civil Procedure, Michael J. Astrue should be substituted for Commissioner Jo Anne B. Barnhart as the defendant in this suit. No further action need be taken to continue this suit, by reason of the last sentence of 42 U.S.C. § 405(g).

[2] The parties have consented in this case to the exercise of jurisdiction by a United States Magistrate Judge (Dkt. 15).

evidence as a reasonable person would accept as adequate to support a conclusion." <u>Bloodsworth v. Heckler</u>, 703 F.2d 1233, 1239 (11th Cir. 1983).  If there is substantial evidence to support the Commissioner's findings, this court may not decide the facts anew or substitute its judgment as to the weight of the evidence for that of the Commissioner.  <u>Goodley v. Harris</u>, 608 F.2d 234, 236 (5th Cir. 1979).[3]

If the Commissioner has committed an error of law, the case must be remanded to the Commissioner for application of the correct legal standard.  <u>See</u> <u>Davis v. Shalala</u>, 985 F.2d 528, 534 (11th Cir. 1993).  If the reviewing court is unable to determine from the Commissioner's decision that the proper legal standards were applied, then remand to the Commissioner for clarification is required.  <u>See</u> <u>Jamison v. Bowen</u>, 814 F.2d 585, 588 (11th Cir. 1987).

## I.

Plaintiff alleges that she became disabled on February 15, 2000, due to a back disorder, pulmonary disease, and other impairments. (T 63, 293)  Plaintiff filed applications for DIB and SSI on January 27, 2003. (<u>Id.</u>)  Her applications were denied initially, upon reconsideration, and by the ALJ in a decision dated August 24, 2005.  (T 25,  43-45, 48-50, 299-300, 302-04)  The Appeals Council denied Plaintiff's request for review on March 31, 2006, allowing the ALJ's decision to stand. (T 3-5)

The ALJ held an administrative hearing on November 9, 2004. (T 306)  In his decision, the ALJ found that Plaintiff was not eligible for benefits because she was not disabled at any time through the date of the decision. (T 25)  SSI payments and DIB were denied. (<u>Id.</u>)  Having exhausted

---

[3] Decisions of the former Fifth Circuit rendered prior to the close of business on September 30, 1981, are binding precedent in the Eleventh Circuit.  <u>Bonner v. City of Prichard, Ala.</u>, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

all administrative remedies, Plaintiff filed a timely petition for judicial review (Dkt. 1).   The Commissioner's decision is ripe for review under the Act.

Plaintiff was 38 years old at the time of the administrative hearing, and she attended school through the eighth grade. (T 309)  Plaintiff's past relevant work experience consists of heavy equipment operator, construction worker, kitchen helper, produce packer, and inspector grader. (T 16)

Following the administrative hearing, the ALJ found that Plaintiff suffered from the severe impairments of obstructive pulmonary disease and a spinal disc protrusion but that Plaintiff's impairments or combination of impairments do not meet or medically equal the impairments listed in Appendix 1, Subpart P of Regulations No. 4.  (T 24)  The ALJ held that Plaintiff could not perform her past relevant work. (Id.) According to the ALJ, Plaintiff retained the residual functional capacity ("RFC") to perform a significant range of light work activity.[4] (Id.) Specifically, the ALJ noted that Plaintiff should avoid concentrated exposure to noxious smokes, dust, fumes, and gases, and should avoid work in poorly ventilated areas. (Id.)

Relying on the testimony of a Vocational Expert ("VE") in response to a hypothetical question which incorporated these limitations, the ALJ concluded that Plaintiff could perform jobs such as assembler, hand packer, and office helper. (T 24, 349)  In reaching the conclusion that Plaintiff was not "disabled" at any time through August 24, 2005, the ALJ held that Plaintiff's statements regarding her limitations and inability to work were not generally credible. (T 24)

The medical evidence has been summarized in the ALJ's decision and will not be repeated

---

[4]  Light work, defined at 20 C.F.R. § 404.1567(b), involves the lifting of no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Light work may require a good deal of walking or standing, or may involve sitting most of the time with some pushing and pulling of arm or leg controls.

3

here except as necessary to address the issues presented.

## II.

**A.**  Plaintiff contends that the ALJ failed to give proper weight to the findings of Plaintiff's treating physician, M. Patrice Callahan, M.D. ("Dr. Callahan").  Specifically, Plaintiff contends that the ALJ's finding that Plaintiff retained the RFC to perform a significant range of light work directly contradicts Dr. Callahan's diagnoses and opinions (Dkt. 16 at 12).

Plaintiff was referred to Dr. Callahan in July 2002 by Gary L. Dunlap, M.D. ("Dr. Dunlap"), an orthopaedist. (T 259)  Later that month, Dr. Callahan examined Plaintiff and noted tenderness in the lumbar paraspinal muscles, buttocks, coccygeal area, and over the left hip; decreased range of motion in the lumbar spine; tenderness in the anterior subacromial aspect of the left shoulder; some discomfort at extreme ranges of motion of the shoulder; and positive supraspinatus and Neer's tests.  (T 256)  Dr. Callahan diagnosed Plaintiff with degenerative changes in the lumbosacral spine and impingement with possible tendinitis of the left shoulder. (Id.)  She prescribed Darvocet for pain and physical therapy. (T 256-57)

In August 2002, Dr. Callahan examined Plaintiff and noted possible nonpitting edema of the ankles. (T 254)  Dr. Callahan changed Plaintiff's pain medication to Hydrocodone and also prescribed a wrist splint for right elbow pain. (Id.)  During Plaintiff's September 2002 examination, she told Dr. Callahan that she had completed one or two physical therapy sessions but had stopped due to pain. (T 252)  In December 2002, Dr. Callahan found that Plaintiff was still in pain and ordered an MRI. (T 250) The MRI showed a small left lateral/foraminal disc protrusion at L4-L5, opposing and possibly contacting the left L4 foraminal nerve root. (T 177)  Dr. Callahan noted that the MRI result "very much matches her radicula[r] type of symptoms into the left lower extremity." (T 249)

4

In February and again in October of 2003, Plaintiff was involved in automobile accidents. (T 244, 321)  In March 2004, Dr. Callahan examined Plaintiff, noted an area of muscle spasm, and prescribed an injection at the hip. (T 244)  In April 2004, Dr. Callahan diagnosed Plaintiff with degenerative disc disease, bursitis/sacroiliitis in the right hip, and chronic myofascial pain. (T 242) Dr. Callahan prescribed pain medication for Plaintiff from at least April through November 2004. (T 241, 242, 288-89, 291)  In July 2004, Dr. Callahan again noted that Plaintiff had back problems with pain in both legs, along with difficulty sleeping. (T 241)  In September 2004, Dr. Callahan noted that Plaintiff had mid-thoracic and left shoulder pain, decreased shoulder strength, and more problems with carpal tunnel in her right wrist. (T 292) During Plaintiff's October 2004 visit to Dr. Callahan, Plaintiff's last visit that is included in the record, Dr. Callahan noted some increase in radicular symptoms. (T 291)  She diagnosed Plaintiff with thoracic and lumbar spine radiculopathy causing chronic myofascial pain and prescribed Oxycodone and Valium. (Id.)

In November 2004, after treating Plaintiff regularly over two years and reviewing two MRIs, (T 249-50) Dr. Callahan completed a physical RFC questionnaire. (T 282-87)  She noted having seen Plaintiff at least once every two months. (T 282)  She provided a diagnosis of thoracic and lumbar radiculopathy and chronic myofascial pain, with a prognosis of "fair." (Id.)  She listed symptoms of radicular pain and weakness in both legs and subjective sensory changes. (Id.)  Based on the MRIs, she noted a disc protrusion to the left affecting a nerve root at L4 as well as a disc protrusion to the right at T7-8. (Id.)

In addition, Dr. Callahan stated that during an eight-hour workday, Plaintiff would have the following limitations: she could sit for 30 to 45 minutes at a time and stand for 30 minutes at a time (T 284); she should elevate her legs to 30 to 45 degrees for 20 to 30 percent of the time if a job were to require prolonged sitting (T 285); and she would need to walk every 15-20 minutes, for five to

5

ten minutes (T 284).   Dr. Callahan also noted that Plaintiff would need the ability to shift at will between sitting, standing, or walking (id.); could sit for a total of about four hours and stand or walk for a total of about two hours (id.); could grasp, twist or turn objects, and perform fine manipulations with her hands for up to 50 percent of the time and reach overhead with her arms up to 25 percent of the time (T 286); and would need to take unscheduled breaks during the workday on a weekly basis. (T 284-85)  She also stated that Plaintiff could rarely lift 10 pounds and never 50 pounds and that Plaintiff could rarely look up or hold her head in a static position and rarely twist or climb stairs (and never stoop, crouch/squat, or climb ladders). (T 285-86)  Dr. Callahan opined that Plaintiff would need a cane or other assistive device for standing or walking (T 285); could walk less than one city block without rest or severe pain (T 284); and would constantly experience pain or other symptoms severe enough to interfere with the attention and concentration needed to perform simple work tasks. (T 283)  It was noted that Plaintiff was taking pain medication that could interfere with cognitive function (T 282) and that she had emotional factors, specifically depression reactive to her physical condition, that contributed to the severity of her symptoms and functional limitations. (T 283)  On the whole, Dr. Callahan concluded that Plaintiff could not tolerate jobs with even low work stress, (id.) that she suffered from impairments that would probably cause her to be absent from work more than four days per month, (T 287) and that Plaintiff's physical and emotional impairments were reasonably consistent with her symptoms and functional limitations. (T 283)

The responsibility for determining a claimant's RFC lies with the ALJ.  20 C.F.R. §§ 404.1546©), 416.946©).  However, the opinion of a treating physician must ordinarily be given substantial or considerable weight unless good cause is shown to the contrary.  Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).  Good cause exists where (1) the opinion of the treating physician is not bolstered by the evidence; (2) the evidence supports a contrary finding; or

6

(3) the opinion of the treating physician is conclusory or inconsistent with the physician's own

medical records. <u>Phillips v. Barnhart</u>, 357 F.3d 1232, 1240-41 (11th Cir. 2004).

In the decision, the ALJ's rejection of Dr. Callahan's opinion was explained as follows:

> The undersigned has also considered the medical opinions and finds that Dr. Callahan's opinion that the claimant can only lift 10 pounds frequently is inconsistent with the objective findings in the medical evidence and are thereby not accepted. Furthermore, although Dr. Callahan is a treating source as defined in 20 CFR 404.1502 and 416.902, her medical opinion (20 CFR 404.1527(a) and 416.927(a)) is not supported by medically objective findings and is inconsistent with the other substantial evidence, and has been given little probative weight.

(T 21)[5]

Despite reviewing the medical records of physicians Gary Dunlap, M.D. ("Dr. Dunlap"),

Richard Redding, M.D. ("Dr. Redding") and Robert P. D'Amico ("Dr. D'Amico") at other points

in his decision (T, the ALJ does not specifically detail the "objective findings in the medical

evidence" that refute Dr. Callahan's findings.  If the ALJ discredits a treating physician's opinion,

the ALJ must state with particularity the evidence and reasoning supporting one or more types of

"good cause" for doing so.[6]  <u>See</u> <u>Phillips</u>, 357 F.3d at 1240-41.

Accordingly, this case is remanded for the Commissioner to specifically articulate and

identify the "objective findings in the medical evidence" which refute the opinions of Dr. Callahan,

---

[5] The ALJ also found that Plaintiff's impairments were "less limiting" than noted by the state agency physicians who limited Plaintiff to sedentary-type work with certain limitations. (T 21, 187-94; 233-40)

[6] (T 17-18, 20-21)  Dr. Amico, a Board-certified family practitioner saw Plaintiff only two times, the last occasion being June 3, 2003.  (T 272) Dr. Dunlap was a treating physician but did not provide an RFC evaluation.  However, while noting that Plaintiff's October 2003 automobile accident exacerbated her radicular pain (sustained from a February 2003 automobile accident)(T 19), the ALJ apparently relied on Dr. Amico's June 2003 assessment (T 20) even though Dr. Amico's evaluation preceded the second automobile accident.  Dr. Callahan may have been the only physician in the record who treated Plaintiff after the accident. (T 19, 244, 291)  The significance of these issues, however, is for the Commissioner to consider on remand.

Plaintiff's treating physician.

    **B.**   Plaintiff also contends that the ALJ failed to consider the combined effect of all of Plaintiff's impairments and subjective symptoms – specifically, Plaintiff's neck pain, migraine headaches, left shoulder pain, gastroesophageal reflux disease, peptic ulcer disease, gallstones, hemangioma of the liver, returning carpal tunnel syndrome in the right wrist, and fractures of the coccyx and left thumb (collectively the "additional impairments") (Dkt. 16 at 15).

    The ALJ's assessment of Plaintiff's impairments included a review of Plaintiff's medical records. (T 17-19)   Further, the ALJ expressly found that Plaintiff's severe impairments did not, singly or in combination, meet or equal one of the impairments listed in Appendix 1, Subpart P, Regulation No. 4.  (T 19)  As Plaintiff acknowledges, the ALJ specifically mentioned most of her additional impairments in this review.[7]  Moreover, the ALJ thoroughly discussed Plaintiff's pain and other subjective symptoms in his analysis of Plaintiff's RFC. (T 19-20)  Finally, the ALJ stated that he made his determination of Plaintiff's RFC "after considering the record as a whole." (T 21)

    The Eleventh Circuit has held that this type of summary is adequate evidence that an ALJ considered the combined effect of a claimant's impairments.  See Wilson v. Barnhart, 284 F.3d 1219, 1224-25 (11th Cir. 2002) (holding sufficient ALJ's statement that "the medical evidence establishes that [Wilson] had [several injuries] which constitute a 'severe impairment', but that he did not have an impairment or *combination of impairments* listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulation No. 4") (alteration in original) (internal quotation marks omitted); Wheeler v. Heckler, 784 F.2d 1073, 1076 (11th Cir. 1986) (holding sufficient ALJ's statement that "based upon a thorough consideration of all evidence, the ALJ concludes that

---

    [7]  The ALJ also discussed Plaintiff's neck pain, migraines, left shoulder pain, peptic ulcer disease, coccyx fracture, and left thumb fracture. (T 17-18, 20)

appellant is not suffering from any impairment, *or a combination of impairments* of sufficient severity to prevent him from engaging in any substantial gainful activity for a period of at least twelve continuous months") (internal quotation marks omitted).  Further, when the ALJ refers to the combination of impairments when addressing whether an impairment or impairments of Listing severity has been established, this language will also satisfy the <u>Wheeler</u> requirement.  <u>Jones v. Dep't of Health & Human Serv.</u>, 941 F.2d 1529, 1533 (11th Cir. 1991).

Therefore, Plaintiff's contention that the ALJ failed to consider the combined effect of Plaintiff's impairments is without merit.

### III.

Remand is necessary for the Commissioner, in compliance with the legal principles set forth above, to specifically articulate and identify the "objective findings in the medical evidence" which refute the opinions of Dr. Callahan, Plaintiff's treating physician  On remand, the parties shall be afforded an opportunity to present additional evidence on the issues remaining for determination. The court expresses no view as to what the result should be on remand.

Upon consideration, it is **ORDERED** that:

(1)     The decision of the Commissioner is **REVERSED** and the case is **REMANDED** for further proceedings and consideration consistent with the foregoing; and

(2)     The Clerk of Court is directed to enter final judgment pursuant to 42 U.S.C. § 405(g), as this is a "sentence four remand."  <u>Shalala v. Schaefer</u>, 509 U.S. 292, 302-03 (1993); <u>Newsome</u>

v. Shalala, 8 F.3d 775, 779-80 (11th Cir. 1993).

**DONE AND ORDERED** in Tampa, Florida, this 6th day of August, 2007.


ELIZABETH A JENKINS
United States Magistrate Judge